STATE OF IOWA, appellee, v. MICHAEL TIM RINEHART, appellant.

No. 51261.

(Reported in 125 N.W.2d 242)

December 10, 1963.

Johnson & Flattery, of Fort Dodge, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, and Gordon L. Madson, Calhoun County Attorney, for appellee.

THOMPSON, J.—On the evening of April 9, 1963, the body of Maxine Ann Hemmingsen, a young woman 19 years of age, was found on a gravel road in the outskirts of the town of Manson. She was dead of stab wounds, three in number. Two of these were in her back; the third was in the front, and penetrated her heart. Miss Hemmingsen's automobile was standing nearby.

Very shortly after the body was found, suspicion was directed toward the defendant, a boy of 15 years who resided with his parents in Manson. He was taken to the police station and questioned by peace officers. This resulted in a statement by the defendant in which he said that he saw Miss Hemmingsen come from a laundromat, he entered her car and asked her for a ride home and after the automobile had gone a short distance he took a hunting knife from his pocket and compelled her to drive to the place where her automobile was found. The statement admits that he stabbed her and then left the scene. A preliminary charge of murder was filed, and the Calhoun District Court appointed Charles F. O'Connor, an experienced attorney of Manson, to represent the defendant.

Mr. O'Connor investigated the case, and consulted with the defendant and with his parents. On July 29, Jack Gray, a lawyer practicing at Rockwell City, the Calhoun County seat, was appointed as co-counsel. Mr. Gray is also an attorney of considerable experience, including service as county attorney of Calhoun County. He also consulted with the defendant and with his parents.

The defendant was examined both at the Iowa State Mental Health Institute at Cherokee and at the psychiatric hospital of the State University of Iowa at Iowa City, and their findings were before the court at all material times.

On August 12, 1963, a county attorney's information was

filed. It charged the defendant with the crime of murder, committed by killing Maxine Ann Hemmingsen, with malice aforethought, contrary to section 690.1 of the 1962 Code of Iowa. The defendant, appearing with both of his then counsel, entered his plea of guilty, after hearing was found guilty of murder of the second degree, waived time, and was sentenced to confinement in the Iowa State Penitentiary at Fort Madison for the period of his natural life.

On August 16, next the defendant, through his present counsel, filed his motion in arrest of judgment, alleging several errors in the proceedings which led to his conviction, judgment and sentence. After a further hearing, the motion was denied, and from this ruling we have the present appeal. Further facts will be stated as we consider the various contentions made.

I. Four errors are assigned. The first asserts that at the time of sentence there was no valid charge of murder against the defendant. It appears that at the arraignment on August 12, the trial court inquired whether the defendant wished to enter his plea at that time, or wished time. Mr. O'Connor replied by moving to strike the words "malice aforethought" from the information, and said that subject to the court's ruling "we are ready to enter a plea." The court said it would withhold ruling until it heard evidence as to the degree. The defendant then stood and upon the court's inquiry, entered his plea of "Guilty". A hearing was then had, with witnesses called, the autopsy report was received in evidence, and at the conclusion the court announced: "The court finds the defendant guilty of second-degree murder, and the motion to strike the words 'with malice aforethought' is sustained."

After a recess, Mr. O'Connor announced: "* * * the defense consents to the sentencing at this time, Your Honor." A question of allocution arises at this point which will be considered in a later division of this opinion. Passing this question at this point, the court then heard both attorneys then representing the defendant urging leniency, and the county attorney requesting the maximum penalty. The court then said: "The court then finds that it was a brutal and beastly murder and that there was no excuse for it and that the boy should not be

turned loose." Further: "Michael Timothy Rinehart, will you stand? It is the judgment of the Court that you be confined in the penitentiary at Fort Madison for the rest of your natural life."

It is now the contention of the defendant that when the words "with malice aforethought" were stricken from the information there was no charge of murder remaining. Malice aforethought, it is urged, is a necessary element of murder, and an indictment or information which does not charge it does not charge murder. So, the argument goes, the court had no right to sentence the defendant for an offense not charged in the information.

The reasoning is at first impression plausible, but it will not bear analysis in view of our interpretation of the law as expressed in our decisions. The allegation "with malice aforethought" was no more than surplusage in the information. The defendant was charged with the crime of murder, in plain terms; and the Code section which was alleged to have been violated, 690.1, was also set out. Section 773.3, Code of 1962, says:

"Contents of indictment. The indictment may charge, and is valid and sufficient if it charges, the offense for which the accused is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by statute. * * *

"The indictment may refer to a section or subsection of any statute creating the crime charged therein, and in determining the validity or sufficiency of such indictment regard shall be had to such reference."

We have followed and applied this statute in State v. Kulow, 255 Iowa 789, 792, 123 N.W.2d 872, 874, State v. Eichler, 248 Iowa 1267, 1275, 83 N.W.2d 576, 580, and other cases. In State v. Kulow, supra, we had the converse of the situation before us in the case at bar. There the indictment as originally drawn charged the offense by the name given it by statute. Immediately before the commencement of the trial the State was permitted to amend by adding words defining the offense. The defendant excepted, alleging that the original indictment

did not charge an offense, and he should at least have been granted a continuance to meet the supposed new charge. We said the indictment sufficiently charged the offense in the first instance, and the added words were no more than surplusage.

■ So it is here. The information as it stood before the words "with malice aforethought" were stricken charged the defendant with murder, and he was still charged with murder when they were deleted. The record does not show why they were eliminated. No grounds were stated in the motion, and the court gave no reason for striking them. But in any event they added nothing to the charge, and it remained as a good and sufficient charge of murder after they were gone.

If it be thought that the defendant was in some way surprised by the conviction of murder of the second degree after the quoted words were deleted, the answer is plain. Our discussion in Division III will show that the defendant and his counsel expected, in fact hoped for, a finding of second-degree murder. There is much evidence as to this. They were interested in eliminating a finding of first-degree murder. The court had made a finding of second degree before it struck the words, and neither defendant nor his counsel made any protest at anytime. Counsel did in fact address themselves to the court asking for leniency in the sentence to be imposed because of the finding of second degree. The record is clear that no one was surprised or made any objection to the court's holding at this point. The assignment is without merit.

■ II. Next the defendant asserts he has a defense to the charge, and should be allowed to withdraw his plea of guilty for the purpose of proving it. It is extremely doubtful whether this question may be raised by a "motion in arrest of judgment." This is defined by Code section 788.1, and the only ground is that "upon the whole record no legal judgment can be pronounced." State v. Kirkpatrick, 220 Iowa 974, 976, 263 N.W. 52, 53; State v. Stennett, 220 Iowa 388, 395, 260 N.W. 732, 736. If the motion be considered as an application to withdraw the plea of guilty, it was not timely. After the plea and before judgment, the court may in its discretion permit withdrawal; but after judgment it is too late. State v. Harper, 220 Iowa

515, 525, 258 N.W. 886, 891; State v. Tracy, 219 Iowa 1412, 1415, 261 N.W. 527, 529.

█ However, passing any technical reasons, it may be observed that if the mere fact that a defendant who has pleaded guilty and been sentenced may then be permitted to withdraw his plea because he has, or claims to have, a defense, he would then be permitted to gamble on the sentence; and if it did not please him, to demand a trial. A defendant, accused of a serious offense, no matter how obviously guilty, under Iowa law is entitled to a jury trial; and few indeed are the cases in which he could not attempt some sort of defense. But whether for technical or meritorious reasons, we think the contention of the defendant at this point cannot be sustained.

█ III. The third assignment of error is based on the contention that the defendant, and his parents, were not advised of the sentence that might be imposed under a plea of guilty and a finding of murder in the second degree. It is claimed his counsel told him he would receive a sentence for a term of years; and the life sentence came as an entire surprise. The record is in conflict on this point. The defendant and his parents deny they were ever told of the possibility of a life sentence, but were advised a conviction of murder of the second degree would result in a sentence of 25 to 35 years. Mr. O'Connor, however, testified: "Q. What was the matter that you advised him as to the punishment? A. That he could receive not less than ten years but could receive up to and including life. We assumed that he would get at least 25 years." Mr. Gray said: "Q. What did you tell them [his parents] as to the consequences of a guilty plea to second-degree murder? A. Minimum of ten up to and including life." Again, as to the defendant himself, Mr. Gray said: "I answer by saying he was informed."

These matters were placed before the court at the time of the hearing on the motion in arrest of judgment. That it found them without merit is shown by the fact that the motion was denied. In such circumstances, the trial court's findings of fact are binding upon us. State v. Ebelsheiser, 242 Iowa 49, 60, 61, 43 N.W.2d 706, 713, 19 A. L. R.2d 865, and citations. See also State v. Bastedo, 253 Iowa 103, 108, 111 N.W.2d 255, 258.

No claim is made that the State in anyway misled the defendant or misrepresented the possible penalty. Whether the defendant would be entitled to any relief because of failure of his own counsel to advise him as to the possible sentence that might be imposed under a plea of guilty, we do not find it necessary to decide.

IV. The final assignment of error is based upon a claimed failure to accord the defendant the right of allocution. Code section 789.6 provides that when the defendant appears for judgment he must be asked "whether he has any legal cause why judgment should not now be pronounced against him." The defendant was sentenced on the same day he entered his plea of guilty, and after the hearing to determine degree. He does not claim this was against his desire, but admits he told his attorneys time might be waived if they thought best. The attorneys thought undesirable publicity would be avoided by asking for immediate sentence instead of waiting the statutory period, when crowds of the curious or morbid might be expected to be in attendance. Accordingly a request for immediate sentence was made. The record shows that after this, and of course after the court had heard evidence, announced its finding of guilt of the second degree and defendant's counsel had each been heard asking for a lenient sentence, the court said: "Do you have any legal cause why judgment should not now be pronounced against the defendant?" Mr. O'Connor: "We have not."

The general rule is that the answer of counsel is binding on the accused. People v. Guerrera, 149 Cal. App.2d 133, 307 P.2d 940, 942; Hill v. State, 9 Okla. Cr. 629, 132 P. 950, 956; 24 C. J. S., Criminal Law, section 1576, page 524; People v. Woodruff, 32 Misc.2d 213, 223 N. Y. S.2d 166, 167; and see Hill v. United States, 368 U. S. 424, 82 S. Ct. 468, 470, 7 L. Ed.2d 417. Further in point is the rule stated in 24 C. J. S., Criminal Law, section 1576, page 524, supra: "As a general rule where, after verdict and before sentence, accused files a motion for a new trial or in arrest of judgment it either raises the implication that he was asked if he had any reasons why sentence should not be pronounced against him, or constitutes a waiver of the right, even in cases where capital punishment is

imposed. So, where accused moves for a new trial, assailing the verdict for several reasons, and is afforded every opportunity to interpose objections to the judgment, he cannot complain that the court, in pronouncing sentence, fails to inform him of the verdict, and to ask him to show cause why judgment should not be pronounced." We are the more inclined to follow this rule since it is not claimed that at the time of sentencing the defendant had any reason to offer why sentence should not be pronounced. The entire record shows he relied upon his attorneys, who were experienced and capable. They had spoken for him in asking leniency in the sentence. And with his later-acquired counsel he has had the opportunity to assert anything that could be considered as affecting his conviction.

It is also urged under this assignment that the defendant, a 15-year-old boy, could not waive the provisions of section 789.2, which says that sentence must be pronounced on a fixed date, which shall "be at least three days after the verdict is rendered." It is well settled that this period may be waived and immediate sentence requested. Bennett v. Bradley, 216 Iowa 1267, 1269, 249 N.W. 651, 652. Indeed, the defendant does not dispute this rule; but it is the evident position of his counsel that he could not waive time because of his age. We are cited to no authority for this contention. He was young; but he was represented by competent counsel, and the purpose of having such representation was that they would protect his interests, and it seems to follow that he would be largely guided by their advice. They had what appears a sufficient reason for wishing to avoid unpleasant publicity by closing the matter at once; no reason is suggested why any harm was done by the waiver. The defendant testified he consented to do whatever counsel thought best at this point. We find no error.

V. We have examined the entire record, and conclude that the defendant's substantial rights were at all times protected, and he had a fair hearing and trial. It is evident his chief complaint is the severity of the sentence. He had expected less. It is true that for a boy of fifteen a sentence for life seems a long time; but we must remember that as judge, jury and executioner, he imposed a sentence to eternity upon Maxine Hem-

mingsen. The Old Testament doctrine of "an eye for an eye and a tooth for a tooth" without doubt seems harsh to the criminal, who prefers the modern trend toward rehabilitation and "the humanities". But the loser of the eye, or the tooth, may well have a different viewpoint; and so should those who have not yet lost any eyes, or teeth, or their lives, when they consider the purpose of law enforcement and the punishment of transgressors.

It is not so important that the particular offender be punished, or that revenge be had; but that a warning that crime has its penalties should be given. State v. Jackson, 251 - Iowa 537, 548, 549, 101 N.W.2d 731, 738.

In this case, the defendant has a relatively high intelligence quotient. No one contends he did not know right from wrong. He went armed with a hunting knife; he entered Maxine Hemmingsen's automobile without an invitation from her; and by the threat of the knife he compelled her to drive to the scene of the killing, where he stabbed her. The sentence is within the permissible limits of the statute. We do not interfere. —Affirmed.

All JUSTICES concur except HAYS, J., who takes no part.