**Michael Timm RINEHART, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 57412.**

Supreme Court of Iowa.

Oct. 15, 1975.

650

Mark Schantz, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., Joel E. Swanson, County Atty., for appellee.

MASON, Justice.

This is a postconviction proceeding instituted December 13, 1972, under chapter 663A, The Code, in which the petitioner, Michael Timm Rinehart, challenges his conviction of second degree murder based on his tendered plea of guilty to the crime of murder which the Calhoun district court

accepted August 12, 1963. Following a degree-of-guilt hearing the same day, the trial court found Rinehart guilty of murder in the second degree and sentenced him to the state penitentiary for the rest of his natural life. Rinehart was represented by counsel at both the plea and sentencing stages.

In the postconviction application as amended June 25, 1973, petitioner asked the Calhoun district court to order a hearing to determine whether Rinehart's plea of guilty was voluntarily and understandingly made; declare invalid his plea of guilty; and allow a trial on the merits. As grounds for this relief petitioner asserted his sentence and conviction were illegal and in violation of amendment 14 to the federal constitution since they were based upon a plea of guilty that was not voluntarily and understandingly made; petitioner's conviction and sentence were illegal and in violation of amendments 6 and 14 to the federal constitution because petitioner was denied the effective assistance of counsel; and such sentence was illegal and petitioner was denied the protections afforded by amendment 14 in that the sentence challenged was predicated upon an improper basis. Petitioner further alleged the issue in these proceedings was either not raised or was inadequately raised in proceedings previously initiated by him to secure relief from his plea of guilty and sentence.

The State in resistance denied the issues raised in the application for relief in these proceedings were not adequately raised in petitioner's appeal from an adverse ruling on a motion in arrest of judgment, *State v. Rinehart*, 255 Iowa 1132, 125 N.W.2d 242.

After an evidentiary hearing the Calhoun district court denied Rinehart relief asked but amended the original sentence of life imprisonment and ordered Rinehart to be imprisoned in the penitentiary for a term of 55 years.

Rinehart appeals from that portion of the trial court's decree refusing to set aside the guilty plea and order a new trial. The State challenges that portion of the decree amending the sentence in its cross-appeal.

I. By way of background, Rinehart was charged with the murder of Maxine Henningson whose body was discovered April 9, 1963, on a gravel road outside of Manson, Iowa. Death was caused by stabbing.

April 10 petitioner was arrested and charged with the crime of murder. At the request of defense counsel, Charles O'Connor, Rinehart was sent to the Mental Health Institute at Cherokee on the order of then Judge David Harris of the Calhoun district court (now Justice David Harris of this court). A report from Cherokee dated April 25 concluded petitioner was neither physically nor psychiatrically ill and stated the murder was caused by Rinehart's striking out in a "blind, unpremeditated fashion" based upon his belief decedent was sexually attacking him. It was reasoned the fifteen-year-old boy, never having experienced any heterosexual contact, acted under "extreme emotional stress" and "defended himself in the only way that was available to him at the moment."

May 3, Judge Harris ordered Rinehart transferred to the State Psychopathic Hospital in Iowa City. The report from that institution dated July 5 differed from the Cherokee study and concluded there was no indication petitioner lacked the mental capacity to plead his own defense or to know what he did was wrong. It was stated, however, Rinehart had a personality defect which involved "anti-social acts, lack of remorse for such acts, poor ability to accept blame, absence of a sense of social responsibility and incapacity for genuine and lasting relationships with people."

The Iowa City report further stated nothing indicated Rinehart experienced "overpowering fear or anxiety" preceding the murder and concluded prognosis for recovery from the personality defects was poor. It was recommended Rinehart be sentenced to the Eldora Training School for Boys.

Jack R. Gray of Rockwell City had been appointed co-counsel for the defense. Al-

though the order of his appointment was not filed until July 29 the record discloses Gray had actually been involved in the defense of the murder charge since July 12.

August 12 Judge R. K. Brannon approved a county attorney's information charging petitioner with the crime of murder. As indicated, Rinehart was arraigned and sentenced the same day.

Some time after receipt of the July 5 report but before the August 12 court proceedings Judge Brannon, on his own initiative, had ex parte conversations with a psychiatrist in Iowa City who had made a psychiatric examination of Rinehart pursuant to the order of Judge Harris. In the course of these conversations Judge Brannon was given to understand Rinehart had stated to the psychiatrists that he had forced the alleged murder victim to commit oral sodomy. Apparently this statement was first obtained from Rinehart while he was under the influence of sodium amytal. Later he was asked and told the version of the incident related to Judge Brannon. This information did not appear in the evaluation of Rinehart submitted by University Hospital psychiatrists to the court. The psychiatrists were not called as witnesses.

August 16, 1963, attorneys Johnson and Flattery of Fort Dodge as co-counsel with O'Connor and Gray filed a motion in arrest of judgment on behalf of petitioner alleging in substance: (1) Rinehart had a legal defense to the charge filed against him, hence no judgment and sentence could be pronounced; (2) the judgment and sentence were in violation of section 789.2, The Code, since time therein could not be waived by Rinehart, a 15-year-old; and (3) Rinehart's tendered plea of guilty was in violation of his constitutional rights since it was not voluntary, having been induced by a misrepresentation as to his legal rights concerning the charge and the penalties flowing therefrom.

September 5 petitioner was permitted to amend his motion alleging that after the court struck the words "with malice afore-thought" from the face of the county attorney's information there was nothing to support the sentence or jurisdiction of the court. It was further alleged Rinehart had been denied his right of allocution.

The relief sought by Rinehart in the motion in arrest of judgment was the setting aside of his plea of guilty which was relied upon to support the judgment and sentence imposed. One of the legal bases urged by Rinehart as a sufficient ground for granting the relief sought was his contention his plea was involuntary since neither he nor his parents had been advised as to the maximum penalty which could be imposed under a plea of guilty and a finding of murder in the second degree.

Petitioner's motion was denied by Judge Brannon and he appealed to this court being represented by Johnson and Flattery (now Judge Flattery). The case was affirmed, State v. Rinehart, 255 Iowa 1132, 125 N.W.2d 242.

Rinehart as appellant in the cited case urged four errors relied on for reversal. In the first he asserted that at the time of sentence there was no valid charge of murder against him. In this connection he contended when the words "with malice afore-thought" were stricken from the information there was no charge of murder remaining. Rinehart also insisted he had a defense to the charge and should be allowed to withdraw his plea of guilty for the purpose of proving it. The third assignment of error was based on the contention defendant and his parents were not advised of the sentence that might be imposed under a plea of guilty and a finding of murder in the second degree. The final assignment of error was predicated on a claimed failure to accord defendant the right of allocution. It was also urged under this assignment Rinehart, a 15-year-old boy, could not waive the provisions of section 789.2, The Code, which say the sentence must be pronounced on a fixed date, which shall "be at least three days after the verdict is rendered."

Each of these assignments was fully briefed and asserted in written argument by counsel for Rinehart in that appeal. This court considered these four assignments individually and in a unanimous opinion of the eight judges participating in the matter determined each adversely to defendant's contentions. Thus, the relief sought, that is the setting aside of Rinehart's plea of guilty on the ground his plea was involuntary by reason of his trial counsel's failure to advise him and his parents of the penalty that might be imposed, was determined adversely to petitioner. See *State v. Rinehart*, 255 Iowa at 1138–1139, 125 N.W.2d at 246.

The evidentiary hearing in the postconviction proceedings mentioned earlier was held June 28, 1973, before Judge James C. Smith. Petitioner was represented at this hearing as well as in all other postconviction proceedings at the district court level by his present counsel on this appeal. The testimony of several witnesses was taken. The submission to the court included depositions of Judge Brannon and Charles O'Connor, transcripts of the degree-of-guilt hearing, sentencing hearing and the hearings on the motion in arrest of judgment.

The trial court in its decree expressed the view the issues presented by petitioner's application dovetailed into two separate categories, the first involved the question whether petitioner's plea was voluntarily and understandingly made, and the other concerned the sentence and its basis. The court was of the opinion competency of original trial counsel bears on the former, if not in fact decisive. In this connection the court found petitioner did not receive the benefit of effective trial counsel before tendering a plea of guilty which the sentencing court accepted August 12, 1963.

We point out it is this guilty plea which the State must rely on as providing the basis for conviction and support for the judgment and sentence imposed.

The trial court's decree has this statement: "In view of this denial of effective counsel and of all other circumstances involved, and applying the totality of circumstances theory, the court must and does find and conclude that applicant's plea of guilty was not voluntarily and understandingly made and entered."

In regard to the basis for sentencing issue the court found: (1) the sentencing court undertook, on its own motion, to travel to Iowa City to discuss applicant's tests and drug-induced statements and the conclusion of his examiners there; (2) trial counsel were not advised of the "excursion" and had no knowledge of the additional information gained; (3) discovery of the sentencing court's conversations with the Iowa City doctors was only recently made and was unknown to counsel representing petitioner in his prior appeal to this court (*State v. Rinehart*, 255 Iowa 1132, 125 N.W.2d 242); and (4) the maximum penalty as imposed in the present matter was based, at least in part, on the information thus obtained by the trial court.

The court further found this combination of secretly obtained information and the court's failure to advise petitioner's counsel prior to accepting the plea of guilty was improper and denied petitioner due process.

We set out in full the trial court's conclusions:

"The issue pertaining to the validity of the guilty plea, i. e., whether or not it was voluntarily and understandingly made, which includes the sub-issues of ineffective counsel, inadequate inquiry by the trial court, applicant's youth and lack of prior criminal experience at the time, etc., was one that was readily apparent or discoverable immediately after sentencing. It was not raised on appeal in 1963, although it could easily have been. Therefore, it was waived by applicant. If such were not the rule, appeals would be endless as successive counsel minutely examined that which transpired before them. (*Horn v. Haugh*, Iowa, 209 N.W.2d 119). Such is not so, however, with the issue concerning the court's basis, or probable basis, for sentencing.

"This court, of course, has no method of knowing the actual reasoning or basis for the life sentence. It can only assume from the nature of the information secretly obtained, the swiftness of sentence, the failure to disclose the obtained information, the imposition of the maximum penalty and the absence of any presentence investigation that the said information based the sentence, at least in part. At any rate, the question must be resolved in applicant's favor. He was entitled to be sentenced based on information subject to challenge.

"Applicant, in both his Application and Amendment thereto, seeks the setting aside of the guilty plea and a new trial. Other relief as set forth in Section 663A.7 of the Code is not prayed for. However, it appears to the court that if it finds in favor of the applicant, which it has in this instance in regard to sentencing, 'It shall enter an appropriate order with respect to the conviction or sentence in the former proceedings—.'

"The court concludes that it has the power and authority to enter an appropriate order correcting the sentence under the provisions of Section 663A.7, although the same was not specifically prayed for, in furtherance of justice.

"This court specifically disregards the information secretly obtained by the sentencing court in Iowa City in arriving at its amended sentence."

The parties have framed what they contend to be the issues presented by petitioner's appeal and the State's cross-appeal in this manner: (1) Was it error for the trial court to raise the issue of waiver *sua sponte*? Was the State required to plead waiver as an affirmative defense?; (2) Did the trial court erroneously interpret both the statute and case law in applying a "once and for all finality" standard of waiver rather than the proper deliberate and inexcusable abuse of process standard?; and (3) Did the trial court abuse its discretion in reducing petitioner's life sentence to a term of years?

Under Iowa law there is but one crime called murder. The so-called degrees of this offense do not constitute distinct crimes, but gradations of the same crime, devised for the purpose of permitting punishment to be varied according to the circumstances of greater or less enormity characterizing the criminal act. *State v. Nutter*, 248 Iowa 772, 775, 81 N.W.2d 20, 21 and *State v. Hodge*, 252 Iowa 432, 460, 105 N.W.2d 613, 619.

Section 663A.8, The Code, which is pertinent to the problem presented here provides:

"Grounds must be all-inclusive. All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application."

II. Rinehart had alleged in his motion in arrest of judgment that his tendered plea was not voluntary and was in violation of his constitutional rights. This allegation rested on the ground Rinehart and his parents was misadvised as to the penalty for second degree murder. As stated, the trial court's denial of this motion was affirmed on appeal.

In connection with his allegation that his sentence and conviction were illegal and in violation of amendment 14 to the federal constitution as they were based upon a plea of guilty that was not voluntarily and understandingly tendered, petitioner had alleged in his application for postconviction relief that the following circumstances surrounding his plea which render it involuntary include: (1) the trial court's failure to

adequately determine whether the plea was entered voluntarily and intelligently; (2) Rinehart's youth and lack of prior criminal experience; (3) a failure to understand the plea could carry a life sentence; (4) the mistaken belief an involuntary confession could be used against him at a trial; (5) defense counsels' failure to investigate the facts or properly advise Rinehart; (6) Rinehart's mental condition prior to or during guilty plea proceedings; and (7) Rinehart was not guilty of second degree murder.

In the June 25 amendment to this application Rinehart alleged as an additional basis for relief the contention he had been denied effective assistance of counsel in the proceedings wherein his plea of guilty was tendered. He maintains this allegation constituted an independent ground for relief.

In other words, the relief sought by Rinehart in the motion in arrest of judgment was the setting aside of his plea of guilty which was relied upon to support the judgment and sentence imposed. In the postconviction proceedings the same relief was sought. In the motion in arrest Rinehart asserted his plea was involuntary because neither he nor his parents had been advised as to the maximum penalty which could be imposed under a plea of guilty and a finding of murder in the second degree, whereas in the postconviction proceedings he alleged his plea of guilty was not voluntarily and understandingly tendered due to his asserted denial of effective assistance of counsel which he insists is the assertion of a new and independent ground for relief.

It could be argued the State's denial that the issues presented by petitioner's application for relief as amended were not adequately raised in his appeal from an adverse ruling on his motion in arrest of judgment serves to challenge petitioner's contention he had asserted a new and independent ground for relief by alleging he had been denied effective assistance of counsel.

The question is dealt with in *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148, where the Court in considering successive motions on grounds previously heard and determined in prior applications for federal habeas corpus or for federal collateral relief under 28 U.S.C.A. § 2255, said:

"By 'ground,' we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, * * or be couched in different language, * * or vary in immaterial respects, * * *. Should doubts arise in particular case as to whether two grounds are different or the same, they should be resolved in favor of the applicant."

■ Although we think the question in the case before us is close, we resolve any doubt in favor of the applicant and treat the allegation as one asserting a new legal basis for granting relief, taking into account the direction given in the statement just quoted from *Sanders v. United States*. Viewed in this light we agree the issue arising from the alleged denial of effective assistance of counsel was either not raised or was inadequately raised in the proceedings previously initiated by Rinehart to secure relief from his plea of guilty.

It is stated in the trial court's conclusions set out earlier that: "The issue pertaining to the validity of the guilty plea, i. e., whether or not it was voluntarily and understandingly made, which includes the sub-issues of ineffective counsel, inadequate inquiry by the trial court, applicant's youth and lack of prior criminal experience at the time, etc., was one that was readily apparent or discoverable immediately after sentencing. It was not raised on appeal in

1963, although it could easily have been. Therefore, it was waived by applicant."

It is the last sentence of the portion just quoted from the trial court's conclusions which gives rise to petitioner's first contention. He maintains it was the State's burden to plead and prove waiver as an affirmative defense. Since the State had not plead any affirmative defense, petitioner argues the court erred in raising the issue of waiver *sua sponte.*

Before reaching the merits of this contention we must determine the sense in which the trial court used the term "waiver." In the Commentary to section 6.1, ABA Standards, Postconviction Remedies, Approved Draft, page 88, it is said: "A most difficult concept to control in any context is that of waiver; this is no less true in postconviction remedies. The term is subject to multiple meanings or shades of meanings which can result in confusion in communication and, perhaps, in thought." In another comment, section 2.1, page 36, we are told that it is wholly inappropriate to attempt a single general definition of waiver for all claims.

In the case before us the court had cited *Horn v. Haugh,* 209 N.W.2d 119 (Iowa 1973), as support for its conclusion. This sentence appears in the cited case at page 121: "The failure to raise a defense in the original trial, unless excused as provided by the section, *waives* the issue in any future postconviction proceeding." (Emphasis supplied).

The foregoing statement was made in connection with the petitioner's contention urged in *Horn* that the clause "or not raised" appearing in section 663A.8 related only to prior postconviction proceedings and did not preclude assertion of matters waived in the original trial. It was determined adversely to the petitioner-appellant therein. *Horn* also cites *State v. Wetzel,* 192 N.W.2d 762, 764 (Iowa 1971), where the court held section 663A.8 *barred* relitigation of previously adjudicated issues. In *Carstens v. Rans,* 210 N.W.2d 663, 664 (Iowa 1973), this court said, "Our postconviction

relief act is ordinarily not available to correct errors which should have been (but were not) raised at some previous stage of the proceeding."

*Horn v. Haugh* actually decided that a ground "not raised" in a prior proceeding may not be the basis for a later postconviction relief petition unless excused as provided in section 663A.8.

This court is convinced that in neither the case before us nor in *Horn v. Haugh,* supra, was the term "waiver" used in its constitutional sense, that is, as expressive of the familiar principle that a waiver must be a voluntary and intelligent act done with actual knowledge of the existence and meaning of the constitutional rights involved and within full understanding of the nature of the charge made against him and the direct consequence of foregoing those rights. Rather, the term "waiver" was employed as expressive of a concept that the allegation of denial of effective assistance of counsel was not available to petitioner as a ground for postconviction relief in light of the record made at the hearing on his petition and the provisions of section 663A.8.

A decree is to be construed like other written instruments; the determining factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly *implied* as well as to that which is expressed. *Cooper v. Cooper,* 158 N.W.2d 712, 713 (Iowa 1968); *Dairyland, Inc. v. Jenison,* 207 N.W.2d 753, 754 (Iowa 1973); *Sound Storm Ent., Inc. v. Keefe, In & For Fayette Cty.,* 209 N.W.2d 560, 566 (Iowa 1973); *In Re Marriage of Woodward,* 229 N.W.2d 274, 277–278 (Iowa 1975); and authorities cited in these opinions.

In our opinion the clear implication of the trial court's conclusions is that the court denied relief on the ground petitioner should have raised the questions pertaining to the validity of his guilty plea at some earlier stage of the proceedings leading to

his conviction and that the evidence introduced had not demonstrated sufficient reason why the asserted denial of effective assistance of counsel had not been asserted on petitioner's appeal.

We point out the foregoing implication stems from the trial court's conclusion reached after petitioner was afforded a full evidentiary hearing which his counsel describes in brief and argument as "an exhaustive hearing" followed by "elaborate briefs." The extent of the evidence introduced and received at this hearing has been indicated. The dismissal was not a summary disposition of Rinehart's application for postconviction relief.

Relative to our construction of the decree attention is called to the fact section 663A.8 which is set out in full earlier in this opinion embodies three situations: (1) where a matter is "finally adjudicated"; (2) where it was "not raised" in any earlier proceeding; and (3) where it is "knowingly, voluntarily, and intelligently waived."

The third situation is the classic constitutional waiver; that is, waiver of a known right which we have determined was not the basis of the trial court's ruling dismissing petitioner's application. Neither are we confronted with a matter which has been "finally adjudicated." Here we are concerned with the situation where the ground relied on for relief "was not raised" in an earlier proceeding.

In this connection the pertinent parts of section 663A.8 provide: "All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground * * * not raised * * * may not be the basis for a subsequent application, *unless the court finds a ground for relief asserted which for sufficient reasons was not asserted or was inadequately raised in the original, supplemental, or amended application.*" (Emphasis supplied).

The problem as to who has the burden of proving "sufficient reason" for not having asserted in the earlier proceeding the grounds now relied on for relief has not been considered in any of our cases dealing with section 663A.8 insofar as has come to our attention.

The State in seeking to uphold the trial court's ruling in the respect now under consideration urges in written brief and argument it is petitioner's burden to bring himself within the provisions of section 663A.8 by showing a "sufficient reason" why the alleged denial of effective assistance of counsel now relied on as a basis for relief was not asserted in the earlier proceedings initiated by him to secure relief from his guilty plea and sentence; that petitioner has failed to sustain his burden.

Petitioner, on the other hand, maintains it is the State's burden to demonstrate there was insufficient reason why the newly asserted ground relied on for relief was not asserted in the earlier proceedings leading to petitioner's conviction. He argues in any event the court was required to hold a factual hearing on the question whether there was "sufficient reason" for not having raised the ground now relied on; here there was no evidentiary inquiry.

■ The court now holds when a party in a postconviction proceeding asserts a ground for relief which was not asserted in the earlier proceedings initiated by him to secure relief from his conviction that party has the burden of proving a "sufficient reason" why the ground now relied on was not previously asserted.

In this connection we use the phrase "burden of proof" to express the idea that a named litigant must in the end establish a given proposition in order to succeed. *Henschel v. Hawkeye-Security Insurance Company,* 178 N.W.2d 409, 418 (Iowa 1970) and *Denniston and Partridge Company v. Mingus,* 179 N.W.2d 748, 753 (Iowa 1970).

Both in his original petition and in his amended petition for postconviction relief Rinehart had recited the various proceedings which he had initiated earlier to secure relief from his plea of guilty and sentence,

but alleged the issues in the present proceedings were either not raised or were inadequately raised in those earlier proceedings. This brought petitioner within what we have previously referred to as the second situation embodied in the statute. Petitioner was then faced with the "sufficient reason" clause of section 663A.8.

By virtue of its dismissal of Rinehart's petition the trial court held in effect that he had failed to sustain his burden of proof necessary to bring him within the provisions of this clause of the statute.

■ We do not agree with petitioner's contention the trial court had failed to hold a factual hearing on the question of the existence of a "sufficient reason" for not having previously raised the ground now relied on. It is this court's view petitioner had been given opportunity to show sufficient reason for not having raised the issues presented by his application for postconviction relief at an earlier stage of the proceedings leading to his conviction.

■ Postconviction review proceedings in this jurisdiction stand as an action at law, triable to the court. *State v. Mulqueen*, 188 N.W.2d 360, 362 (Iowa 1971). Ordinarily, in such proceedings our review is not de novo. *State v. Master*, 196 N.W.2d 548, 550 (Iowa 1972). However, when, as here, issues as to violation of constitutional safeguards are raised this court is obliged to make an independent evaluation of the totality of the relevant circumstances shown by the entire record under which rulings on those constitutional rights were made. That is, when a constitutional issue is presented, the evidence relevant to the issue is reviewed de novo. *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975); *State v. Boren*, 224 N.W.2d 14, 15–16 (Iowa 1974); *State v. Winfrey*, 221 N.W.2d 269, 272–273 (Iowa 1974); *State v. Ware*, 205 N.W.2d 700, 703 (Iowa 1973); *State v. Thomas*, 205 N.W.2d 717, 721 (Iowa 1973); *State v. Elmore*, 201 N.W.2d 443, 445 (Iowa 1972).

■ A de novo review of the totality of the relevant circumstances shown by the record compels the conclusion petitioner did not sustain his burden of demonstrating a "sufficient reason" for not having raised the question of denial of effective assistance of counsel in the prior proceedings initiated by him.

As the concept of "waiver" in its constitutional sense is not involved in this appeal, the first and second issues which petitioner contends are presented for review do not afford him a basis for reversal.

III. Petitioner's motion to dismiss the State's cross-appeal for failure to file written briefs on time was submitted with his appeal. After consideration of the matter the court concludes it should be and is hereby denied.

IV. Therefore, we turn to a consideration of the State's cross-appeal from that portion of the trial court's decree amending the original sentence of life imprisonment imposed on Rinehart following his conviction by his plea of guilty to a term of 55 years.

The three contentions urged by the State as grounds for reversal have been fairly summarized as presenting the question whether the trial court abused its discretion in reducing petitioner's life sentence to a term of years.

Although the trial court's findings and conclusions in regard to the basis for the life sentence have been set out earlier, some repetition of those findings and conclusions will be necessary in our consideration of the State's cross-appeal.

In petitioner's amended application for postconviction relief he alleged "the sentence was illegal and the applicant was denied the protections afforded by the Fourteenth Amendment in that the sentencing was predicated upon an improper basis." This contention rests on Judge Brannon's consideration of Rinehart's alleged statement he had forced the murder victim to commit oral sodomy and had

stabbed her when bitten in the process. This information was obtained by the Judge as a result of an ex parte conversation in Iowa City with a psychiatrist who had examined Rinehart.

Petitioner had asked by way of relief he be afforded a hearing to determine whether his plea of guilty was voluntarily and understandingly made; that an order be entered declaring invalid his plea of guilty; and for a trial on the merits.

The trial court expressed the view petitioner "was entitled to be sentenced based on information subject to challenge." In the court's opinion the sentencing court's failure to advise counsel of the information obtained as a result of the Iowa City trip was improper and denied petitioner due process; it had the power and authority in furtherance of justice to enter an appropriate order correcting the sentence under the provisions of section 663A.7, even though such relief was not specifically prayed for by petitioner.

This section provides in part:

" * * * If the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper. The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. This order is a final judgment."

The court then reduced petitioner's life sentence to a term of 55 years relying on this sentence of the statute, "It shall enter an appropriate order with respect to the conviction or sentence in the former proceedings * * *."

The trial court's conclusion as to denial of due process stems from its finding trial counsel were not advised of the "excursion" and had no knowledge of the additional information gained, that discovery of the sentencing court's conversation with the Iowa City doctors was recently made and was unknown to counsel representing petitioner in his prior appeal to this court.

Petitioner maintains any alleged facts relied upon in the sentencing process which are not presented to the court in a presentence report prepared by a professional probation officer or which are not part of the court records must be disclosed to defendant and his counsel.

In this connection petitioner argues counsel must be allowed to function at the time of sentencing and one of such functions is to see that the conviction and sentence are not predicated on misinformation or misreading of court records, citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, 1693. Rinehart maintains neither trial counsel nor counsel representing him at the hearing on the motion in arrest of judgment were allowed to function in this respect by challenging the premises upon which this sentence rests. Petitioner insists had counsel known Judge Brannon was relying on the information obtained in an ex parte conversation with the Iowa City psychiatrists, they could have at least presented evidence tending to show the unreliability of the information thus obtained.

In written brief and argument the State maintains that before a court may determine failure to reveal such information as was gathered by the sentencing court may be grounds for postconviction relief, it must be shown petitioner made a demand for such disclosure.

The controversy under consideration in this division centers around matters which occurred at or related to the sentencing stage. It does not involve the validity of petitioner's guilty plea.

■ The trial court's ruling that petitioner was denied due process raises issues as to violation of petitioner's constitutional rights. As stated in division II, supra, we therefore make an independent evaluation of the totality of the relevant circumstances

shown by the record under which the ruling on this constitutional right was made.

As indicated, the trial court's conclusion rested on its findings that trial counsel were not advised of Judge Brannon's trip to Iowa City, had no knowledge of the information gained by him in his conversation with the doctors and the facts related in the ex parte conversation, being only recently discovered, were unknown to counsel representing petitioner in his prior appeal to this court.

This court has made its own independent evaluation of the relevant facts disclosed by the entire record.

There is evidence Mr. O'Connor was aware of the doctors' use of the truth serum during Rinehart's examination in Iowa City. He had been contacted by Rinehart's parents relative to their consenting to the use of the drug by the psychiatrists. Furthermore, O'Connor himself had earlier contacted the Cherokee authorities concerning the advisability of the use of truth serum. O'Connor was also aware Rinehart, while under the influence of the drug at Iowa City, had made statements which were later repeated by him when he was free of the effects of the drug. In his deposition O'Connor testified he recalled that some time after the imposition of sentence he became aware of Judge Brannon's conversation with the Iowa City doctors.

The record discloses Gray and O'Connor went to Iowa City July 22, 1963, for the purpose of talking to Dr. Brown, author of the letter or report dated July 5, 1963, which is identified as petitioner's exhibit 4 in the appendix. Gray explained the purpose of the trip was to have some verification of the report or assurances the contents of the report reflected what the doctors found out from their examination.

Gray also testified Dr. Brown told him what Rinehart had said while under the influence of the truth serum. The doctor also told Gray Rinehart had corroborated his previous statement when not under drugs.

Gray also stated that after returning from Iowa City he discussed the matter of his Iowa City visit with Rinehart and later with Rinehart's parents.

At the September 12 hearing on the motion in arrest of judgment Judge Brannon informed counsel he had received a letter dated September 11, 1963, from the Iowa City psychiatrists. The Judge advised counsel at this hearing he had been acquainted with the contents of the letter at the time of sentencing. Evidently, this letter was a confirmation or restatement of what the doctors had told Judge Brannon on the Judge's earlier trip to Iowa City. Judge Brannon then stated, "I would like to have Mr. Johnson read this letter. Let's take a ten minute recess." The record discloses an 18 minute recess was taken at this point. The court then made paragraph 3 a part of the record in the motion in arrest of judgment proceedings. Other portions of this letter do not appear in the record. Mr. Johnson, of counsel for Rinehart at this hearing, objected to the insertion of the portion of the letter in the record as being incompetent, irrelevant and immaterial. Johnson insisted injection of this material into the record violated the protections and safeguards given to the petitioner under both the federal and state constitutions. At no time in the proceedings did counsel request they be afforded a fair opportunity to controvert the contents of the letter.

Gray had also testified that Judge Brannon showed him a letter which the Judge said was the basis for confining Rinehart for life. The attorney had made a search for the letter but was unable to find it at the time of the postconviction hearing but did recall it was from a doctor at Iowa City.

This is a fair summary of the record under which the trial court in the postconviction proceedings determined Rinehart's

constitutional right of due process had been violated.

Petitioner in brief and argument says: "No claim has been or need be made that the sentencing court cannot properly consider appropriately obtained, reliable information from outside the record of the trial, arraignment, and court file. Certainly, the claim has not and need not be made that properly obtained, reliable information concerning the circumstances surrounding the commission of an offense is not a proper factor to consider in determining sentence. Nor has the claim been made that Michael Rinehart was entitled to cross-examine the psychiatrist. Due process at sentencing does not require a full panoply of trial procedures."

The contentions of the parties present the question of the court's duty of disclosure to the defense of the factual contents and conclusions of any presentence investigation.

The issue of disclosure of presentence information has been the subject of recommendations from the Advisory Committee on Federal Criminal Rules in 1944, 1962, 1964, 1966 and in 1974. The history is dealt with in considerable detail in 2 Wright Federal Practice and Procedure: Criminal, section 524 and 8A Moore, Federal Practice and Procedure, section 32.03(4). See 62 F.R.D. 271, 324.

Rule 32(c), Federal Rules of Criminal Procedure deals with presentence investigation in federal jurisdictions. The most recent proposed amendment to this rule was submitted to Congress April 22, 1974, to take effect on August 1, 1974. However, Congress postponed the effective date until August 1, 1975.

Rule 32(c)(3)(A) as amended now provides that before imposing sentence the court shall *upon request* permit the defendant or his counsel if he is so represented to read the report of the presentence investigation with certain exclusions.

This court has dealt with the problem of disclosure of presentence investigation in *State v. Delano*, 161 N.W.2d 66, 69–72 (Iowa 1969); *State v. Cole*, 168 N.W.2d 37 (Iowa 1969); and *State v. Waterman*, 217 N.W.2d 621, 624 (Iowa 1974).

As a result of our de novo review we disagree with the trial court's conclusion stated earlier that the facts related to Judge Brannon in his ex parte conversation with the doctors were unknown to counsel representing petitioner in his prior appeal to this court. The record discloses Judge Brannon advised counsel at the hearing on the motion in arrest of judgment on September 12, 1963, he had been acquainted with the contents of a letter dated September 11 from the Iowa City doctors at the time of the sentencing on August 12. A recess was taken and the Judge gave the letter to defense counsel to inspect.

The prior appeal to this court referred to was from the trial court's ruling on Rinehart's motion. The errors assigned for review in that appeal have been set out earlier. They did not include any complaint challenging the court's use of the information obtained from the doctors.

■ This court is of the opinion after an independent evaluation of the relevant circumstances shown by the entire record under which the trial court's ruling was made that Rinehart's constitutional right of due process was not violated in this instance. The trial court erred in holding otherwise. In support of our conclusion see *United States v. Picard*, 464 F.2d 215, 218–219, n. 4 (1 Cir. 1972); *United States v. Knupp*, 448 F.2d 412, 413 (4 Cir. 1971); *United States v. McKinney*, 450 F.2d 943 (4 Cir. 1971); *Fernandez v. Meier*, 432 F.2d 426, 427 (9 Cir. 1970); *Cook v. Willingham*, 400 F.2d 885 (10 Cir. 1968); *United States v. Stidham*, 459 F.2d 297, 299 (10 Cir. 1972), cert. den., 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118; *United States v. Queen*, 140 U.S.App.D.C. 262, 435 F.2d 66, 67 (1970); *United States v.*

*Dockery*, 145 U.S.App.D.C. 9, 447 F.2d 1178, 1182–1184 (1971), cert. den., 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266; and authorities cited in these opinions.

The sentence of life imprisonment is ordered reinstated.

The case is therefore affirmed on petitioner's appeal and reversed on the State's cross-appeal.

All Justices concur, except HARRIS and McCORMICK, JJ., who take no part.