**STATE of Iowa, Appellee,**

v.

**Christopher Sterling YORK, Appellant.**

**No. 89-934.**

Court of Appeals of Iowa.

Sept. 26, 1990.

Raymond E. Rogers, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Virginia Barchman and Richard J. Bennett, Asst. Attys. Gen., and William H. Appel, Wapello County Atty., for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

On November 2, 1986, at approximately 9:30 p.m., an explosion and fire virtually destroyed Christopher Sterling York's apartment building. A basement which had been located under a portion of the apartment building was now a gaping hole with the retaining walls exposed to the elements. Deputy Fire Marshal Hiles described the site as having been affected by "a horrendous explosion." Hiles testified he believed Elaine Dudley was in the basement when the explosion occurred but her body was found twenty-nine feet from the house. A wall of the apartment building, was found scattered as debris over 144 feet from its original position. After the fire department extinguished the fire, what remained of York's building was little more than ash and charred timber.

The fire investigator, Hiles, arrived at the scene after 11:00 p.m., supervised the removal of Dudley's body, made some general observations of the fire scene, and arranged to have the area secured. Hiles testified that a complete investigation was impossible that evening due to fire, smoke, and darkness. When he left the scene at 2:00 a.m., firemen were still attempting to extinguish the fire. Hiles returned early the following morning and continued his investigation into the cause and origin of the fire. His attempt to inspect the basement was hampered by accumulated water and was not completed until later that afternoon. Hiles' dog (trained to smell accelerants) "alerted" at what had been a bathroom; samples from the area were collected which carried a strong smell of gasoline.

Hiles then left the scene of the fire and notified the State Fire Marshal it appeared there might be arson involved in the explosion. Agents of the fire marshal's office returned to the scene with a search warrant and made a further search of the premises. Several containers buried in the debris, as well as the remains of a bathtub, washer, and dryer were found which had been used to hold gasoline.

York was accused of arranging for the explosion and fire in the apartment building he owned and in which he lived. The purported motive was to collect insurance proceeds. Under the State's theory York arranged for Elaine Dudley, with whom he shared his apartment, to set the fire and explosion while York was out of state. As noted previously, Elaine Dudley was killed in the explosion and fire.

York was charged with arson in the first degree. A jury found him guilty of that

crime, and he has appealed from the resulting conviction.

I. SEARCH OF FIRE SCENE. York contends the district court should have suppressed evidence resulting from a warrantless search of the burned-out building by a deputy state fire marshal. He argues the district court erred (1) in concluding York had no expectation of privacy in the rubble remaining after the fire, and (2) in finding this case falls within *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), where the United States Supreme Court held fire officials need no warrant to remain on a fire scene for a reasonable time to investigate the cause of a blaze.

■ When a defendant is alleging error involving a constitutional right, such as here, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa App.1987).

■ The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises turns on several factors: (1) whether there are legitimate privacy interests in the fire-damaged property that are constitutionally protected; (2) whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and (3) whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity. *Michigan v. Clifford*, 464 U.S. 287, 292, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, 483 (1984). In *Michigan v. Tyler*, 436 U.S. 499, 505, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486, 495–96 (1978), the United States Supreme Court observed that reasonable privacy expectations may remain in fire-damaged premises and, in *Clifford*, the Court explained:

> Privacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders. *Some fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the* *owner's subjective expectations.* The test essentially is an objective one: whether "the expectation [is] one that society is prepared to recognize as 'reasonable." [citations omitted] If reasonable privacy interests remain in the fire-damaged property, the warrant requirement applies, and any official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances.

464 U.S. at 292–93, 104 S.Ct. at 646, 78 L.Ed.2d at 483 (emphasis added). Our own supreme court has also enunciated this principle. *See State v. Hansen*, 286 N.W.2d 163, 166 (1979) (case-by-case determination of privacy expectations in fire-damaged premises is appropriate).

■ We conclude that York had no reasonable privacy interests remaining in the ash and ruins of this fire scene. Little remained after the fire and explosion; the apartment complex was virtually destroyed. Because York could have no reasonable expectation of privacy in a gaping hole in the ground filled with and surrounded by ashes and debris, no violation of such an expectation could have occurred by the fire marshal's entry onto the premises. We need not address York's second assignment of error in light of our determination that the trial court correctly concluded York had no reasonable expectation of privacy remaining in the rubble of the fire scene.

II. JURY INSTRUCTIONS. York next contends the district court erred when it instructed the jury that defendant could be convicted of first-degree arson if defendant "did cause or did aid and abet another to cause a fire or explosion by placing a combustible material in or near the property." He argues there was no evidentiary support for defendant directly causing the fire and the instruction submitting this theory was reversible error. York acknowledges that his attorney did not raise this issue in objecting to the instructions but argues this omission resulted from ineffective assistance of counsel.

In order to prevail on a claim of ineffective assistance of counsel York must demonstrate (1) trial counsel's failure to object constituted a failure of an essential duty and (2) actual and substantial prejudice resulted. *See State v. Miles*, 344 N.W.2d 231 (Iowa 1984). Even were we to find trial counsel's failure to preserve error was a breach of an essential duty, York has not demonstrated the requisite prejudice. Relying on *State v. Mays*, 204 N.W.2d 862, 865 (Iowa 1973), York argues that instructing a jury on an issue unsupported by the evidence is "generally prejudicial." However, there is no reversible prejudice if objection to the instruction would not have produced a difference in the verdict of the jury.

The evidence produced at trial overwhelmingly showed York's involvement in causing the fire which destroyed his apartment complex. York's former wife testified defendant told her, before the fire, of his plan to burn down the apartment complex. He indicated he needed the insurance proceeds a fire would bring because he could not meet his financial obligations. Other witnesses corroborated York was laid off at the time of the fire and was having money difficulties. York's former wife also testified that several days before the fire she saw two barrels of gasoline on defendant's truck and that he borrowed $100 so he could purchase more gasoline for starting the fire. Additionally, she testified York told her someone else would start the fire and he would be out of state when it occurred. After York's arrest he told a fellow jail inmate he had planned the fire set by Elaine Dudley. Evidence presented also showed that shortly before the fire York had rented a storage facility, moving a large amount of his personal property there. Under these circumstances, we are unable to conclude that omitting the objectionable instruction would have resulted in a different verdict.

For the foregoing reasons, defendant's conviction is affirmed.

AFFIRMED.