Michael Timm RINEHART, Appellee,

v.

Lou V. BREWER, Warden of the Iowa State Penitentiary, Appellant.

No. 76-2090.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1977.

Decided Aug. 19, 1977.

Ray W. Sullins, Asst. Atty. Gen. (argued), and Richard C. Turner, Atty. Gen., Des Moines, Iowa, on brief, for appellant.

Mark E. Schantz, Prisoner Assistance Clinic, Iowa City, Iowa, argued and filed brief, for appellee.

Before STEPHENSON and WEBSTER, Circuit Judges, and BENSON,* District Judge.

STEPHENSON, Circuit Judge.

The state of Iowa, on behalf of Warden Brewer, has appealed from a grant of habeas corpus. The district court[1] granted Michael Timm Rinehart's motion for summary judgment pursuant to his petition for writ of habeas corpus filed under 28 U.S.C. § 2254. The district court's opinion is reported at 421 F.Supp. 508 (S.D.Iowa 1976).

The writ was granted upon three due process grounds: (1) Rinehart's plea of guilty to a murder charge was not, when viewed in the totality of circumstances, entered voluntarily and understandingly; (2) Rinehart received ineffective assistance of counsel in the proceedings leading to his conviction; and (3) Rinehart was denied his due process right to a disinterested and impartial tribunal at his arraignment and sentencing. These three grounds constitute the three substantive issues on appeal. Preliminarily, the state of Iowa also raises two procedural grounds for denying the writ—that Rinehart has allegedly failed to exhaust or has deliberately bypassed available state remedies.

■ In passing upon the motion for summary judgment, the district court was required to view the case in the light most favorable to the state, and to give it the benefit of all reasonable inferences to be chosen from the materials before the court. In connection with this appeal, we are required to apply the same standards. *Klinge v. Lutheran Charities Ass'n of St. Louis*, 523 F.2d 56, 61–62 (8th Cir. 1975). We agree that no genuine issue exists as to any material fact and that Rinehart is entitled to judgment as a matter of law.[2] Accordingly, we affirm.

On April 9, 1963, Rinehart, age 15, was arrested for the murder of a 19-year-old girl who died of stab wounds the same day near Manson, Iowa. After over five hours of intensive police questioning which began shortly after his arrest, Rinehart signed a statement at about 3:00 a. m. on April 10 which implicated himself in the girl's death. Neither an attorney nor Rinehart's parents were present during this questioning. In addition, several officers took Rinehart to his home and confiscated, without obtaining a search warrant, a knife and some clothing believed to be of evidentiary significance. Later on April 10 Rinehart's parents obtained a local attorney to represent him. Rinehart was sent to the Mental Health Institute at Cherokee, Iowa, and to the State Psychopathic Hospital at Iowa City, Iowa, for psychiatric examinations. On July 18, 1963, an attorney from a nearby town was engaged as co-counsel. On August 12, 1963, Rinehart pled guilty to the murder charge, a degree of guilt hearing was held, and Judge R. K. Brannon found Rinehart guilty of second degree murder and sentenced him

---

* The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa.

2. Both parties had submitted the case on the record of the facts and proceedings from the state courts, so there was no taking of further testimony by the district court. After hearing oral argument pertaining to the motion for summary judgment, the district court granted the state's request for an additional three weeks to offer additional evidence. Since the state made no further offerings, the court deemed the motion submitted on the pleadings, record and briefs. The court, pursuant to 28 U.S.C. § 2254d and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), conducted an independent review of that record by applying a presumption of correctness. We are convinced that Rinehart received a full and fair hearing on his application for post-conviction relief in state court, and that the facts found by the district court based thereon are amply supported by the record.

to life imprisonment that same day. On August 16, 1963, Rinehart filed a motion in arrest of judgment. After a hearing that motion was denied. That denial was affirmed by the Iowa Supreme Court.[3]

On September 5, 1972, Rinehart filed a pro se petition for writ of habeas corpus in the United States District Court for the Southern District of Iowa. That petition was dismissed for failure to exhaust state remedies. Subsequently, Rinehart filed an application for post-conviction relief pursuant to Chapter 663A, Code of Iowa, in state district court based upon due process violations now reasserted in this habeas action—involuntary guilty plea, ineffective assistance of counsel, and judicial impropriety in the sentencing procedure.[4] After an evidentiary hearing, the Honorable James C. Smith, District Judge for the Calhoun County District Court, found in favor of Rinehart on all three due process grounds. Although Judge Smith determined that Rinehart's plea was involuntary and that his counsel was ineffective, he held as a matter of state procedural law that Rinehart had waived his right to raise those issues since he failed to raise them in his earlier motion in arrest of judgment. *See Horn v. Haugh*, 209 N.W.2d 119 (Iowa 1973). But Judge Smith found that the third ground, judicial impropriety in the sentencing procedure, had not been waived, and reduced Rinehart's sentence to a term of 55 years. On appeal, the Iowa Supreme Court held that all three grounds had in substance been procedurally waived and further held that the sentencing procedure had not been in violation of due process. Appellee's sentence of life imprisonment was reinstated.[5] Thereafter, Rinehart filed this petition for writ of habeas corpus.

Prior to filing the instant habeas action, Rinehart had exhausted his available state remedies as required by 28 U.S.C. § 2254.

Since the Iowa Supreme Court held that Rinehart had waived all of his claims under state procedural law, Rinehart has clearly exhausted his due process arguments at the state level.

The state contends that since Rinehart failed to raise the issues of ineffective assistance of counsel, impartial tribunal and improper sentencing in his 1963 motion in arrest of judgment, he has deliberately bypassed state procedures with respect to those federal constitutional claims. Therefore, he should be barred from asserting those claims in this habeas corpus action. However, the district court found and the state concedes that the issue of deliberate bypass was not raised in the pleadings below. The state failed to affirmatively plead deliberate bypass in the return, but it did raise the issue in a brief before the district court. Although the district court was not required to consider the deliberate bypass issue, it found that even if the issue had been timely raised, Rinehart did not deliberately bypass state procedures.

We agree that state procedures were not deliberately bypassed here. In spite of the state's contrary contention, the Iowa Supreme Court's holding of waiver under state procedural law is not determinative in this habeas action. The waiver ruling under state procedural law bars federal habeas review of the underlying federal claims only if the defendant deliberately bypasses state procedures. Federal courts are required to apply federal constitutional standards to the waiver problem, that standard being whether the defendant made a "considered choice" to waive the federal claim in state court. *Fay v. Noia*, 372 U.S. 391, 438–39, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). A choice made by counsel not participated in by the defendant does not automatically bar habeas review. *Fay v. Noia, supra*, 372 U.S. at 439, 83 S.Ct. 822. Since

3. *State v. Rinehart*, 255 Iowa 1132, 125 N.W.2d 242 (1963).

4. The claim of a partial tribunal at arraignment, which is now before this court as grounds for a writ of habeas corpus, was not raised in the pleadings before the state district

court. However, it was argued orally to that court without objection from the state, but never ruled upon.

5. *Rinehart v. State*, 234 N.W.2d 649 (Iowa 1975).

Rinehart's attorneys prepared and filed the motion in arrest of judgment without discussing with him the grounds to be alleged in the motion, Rinehart cannot be said to have participated in the choice by counsel. We conclude after examining the record below that Rinehart made no "considered choice" to waive the federal constitutional claims in state court. We are satisfied that he did not knowingly and understandingly forego the privilege of asserting those claims in state court.[6] *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Losieau v. Sigler*, 421 F.2d 825 (8th Cir. 1970).

The first substantive issue is whether Rinehart's guilty plea was made voluntarily and understandingly. Since this case arose prior to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the voluntariness of the plea must be determined by a comprehensive examination of the totality of the circumstances. There are a number of factors present in this case which, when considered aggregately, compel the conclusion that Rinehart's guilty plea was involuntary as a matter of law.

Rinehart was only 15 years old at the time he made the guilty plea and was somewhat immature for his age. Although he had at least average intelligence, he had no prior experience with the legal system and no other basis for understanding what was happening to him. In addition, Rinehart had difficulty in communicating with respect to the underlying events. His failure to fully grasp the situation is perhaps best illustrated by his requests as to whether he would be able to have a car in jail. Under these circumstances, a particularly stringent duty is imposed upon both defense counsel and the trial court to make certain that the defendant understands the charges and the consequences of his plea. That duty was not fulfilled as to Michael Rinehart.

Rinehart understood neither the nature of the charge nor the consequences of his guilty plea because of the inadequate explanations of the law given to him by defense counsel and the court. There is uncontradicted evidence in the record which suggests that Rinehart was not informed of the elements of the crime of second-degree murder. Since his own defense counsel were confused as to the distinctions among first- and second-degree murder, and manslaughter, it is inconceivable to conclude that Rinehart would have known of the

---

**6.** Although addressed by neither party here, a more recent line of cases has, in some circumstances, modified the standard to be applied in determining whether habeas relief is barred by a state procedural waiver ruling. The standard announced in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), as extended by *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), is that a state court's ruling that defendant waived his federal constitutional claim as a matter of state procedural law bars federal habeas corpus review absent a showing of cause for the noncompliance and actual prejudice resulting from the alleged constitutional violation. The "cause and prejudice" test affords greater respect to the state procedural waiver ruling than did *Fay v. Noia, supra*, but the extent of this difference is not clear because the Court has left open for future resolution the precise definition of "cause" and "prejudice." However, *Fay* apparently remains viable in some circumstances. In *Sykes, supra*, the Court indicated that in comparison with the broadly sweeping scope of *Fay*, "we do not choose to paint with a similarly broad brush here." *Wainwright v. Sykes, supra*, —— U.S. at —— n. 12, 97 S.Ct. at 2507. For example, where the waiver is by defendant's own decision the *Fay* standard which requires a knowing and intelligent waiver by defendant arguably still applies. However, where the waiver relates to events during trial such as waived objections or counsel's tactical decisions the "cause and prejudice" standard applies. In Rinehart's case, assuming arguendo that the "cause and prejudice" standard did apply, we believe such cause and prejudice exists here. Given the procedural context in which the asserted waiver occurred, the ineffectiveness of counsel, the fundamental character of constitutional rights at stake, and the overall lack of fairness of the proceedings (the judge's impropriety), we believe that sufficient "cause" existed to excuse the defendant for the noncompliance and that he was prejudiced by such constitutional violations. Accordingly, Rinehart is not barred from asserting his constitutional claims in this habeas action even under the "cause and prejudice" standard.

intent element required to convict him of second-degree murder or that a guilty plea would be an admission of the existence of the intent to kill. In addition, the trial judge did not explain the charge to Rinehart. If the defendant was not informed that intent to cause the victim's death is an essential element of the crime charged, his guilty plea was not voluntarily entered. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

In addition, defense counsel gave little or no attention to the very real possibility that manslaughter should be the appropriate outcome.[7] One of the defense lawyers did not discuss the law of manslaughter with Rinehart or his parents and himself was unfamiliar with its elements. The other defense lawyer did not recall whether he had advised Rinehart that manslaughter was a lesser included offense, but speculated that he probably had. It is unlikely that Rinehart would have understood manslaughter to be the appropriate result when the record reveals his own lawyers were confused as to the difference between manslaughter and murder.

There is conflicting evidence as to whether Rinehart was ever correctly informed of the possibility of a sentence of life imprisonment if he were convicted of second-degree murder. But whether he was correctly informed or not, he did not *understand* life imprisonment to be a possibility. Defense counsel's continuing advice that a 25-to-35 year sentence could be expected, although only speculative opinion by counsel, was understood by the defendant to be "the law." This conclusion is supported by the failure of Rinehart's parents to understand that a life sentence was possible. If his adult parents did not understand life imprisonment to be a possibility, it seems unlikely that a 15-year-old boy would have so understood.

Further, these infirmities were not cured by the trial court. Judge Brannon did not inquire whether the defendant understood the charge or the consequences of his guilty

plea, and offered no advice in this respect. Although Judge Brannon knew that he was dealing with a 15-year-old first offender whose parents were not present at arraignment, and that several possible defenses might be available to the defendant (self-defense, provocation and diminished responsibility), he made no attempt to ascertain whether the defendant understood the law in relation to the facts or the nature of the charge against him. Furthermore, he did not ask the defendant whether he understood the consequences of his guilty plea—the rights he was relinquishing and the maximum possible sentence.

 In view of the totality of the circumstances in this case, Rinehart's guilty plea was clearly not entered voluntarily. Rinehart's age, inexperience, and communication difficulties, coupled with inadequate explanations of the nature of the charge and the consequences of his plea made by defense counsel and the court can lead only to the conclusion that Rinehart's guilty plea was not made voluntarily and understandingly.

 The second substantive issue is whether Rinehart received ineffective assistance of counsel in the proceedings leading to his conviction. The evaluation of a habeas corpus petition alleging ineffective assistance of counsel is a two-step process in this circuit. The standard for measuring effective assistance of counsel was articulated in *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976):

> [T]rial counsel fails to render effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances.

In addition, the defendant must have been materially prejudiced in the defense of his case by the actions or inactions of defense counsel. *Crismon v. United States*, 510 F.2d 356, 358 (8th Cir. 1975).

 Applying this standard, we conclude that as a matter of law Rinehart

---

7. There was some evidence that Rinehart was not the aggressor, but was acting upon provocation so that manslaughter might be the appropriate result.

received ineffective assistance of counsel in three respects. First, defense counsel did not adequately explain to the defendant and his parents the nature of the charge and the consequences of his guilty plea. As discussed above with respect to the issue of voluntariness of the plea, the youthful age and inexperience of the defendant imposed a stringent duty upon defense counsel to make certain that the defendant understood the nature of the charge and the consequences of his plea. Regardless of whether defense counsel actually informed the defendant of the possibility of a life sentence for second-degree murder or of the possibility that manslaughter might be the appropriate outcome, they did not adequately follow up to ascertain whether the defendant and his parents fully *understood* those possibilities. Rinehart was materially prejudiced thereby because he was unable to make an intelligent and informed choice from among his alternative courses of action.

Second, defense counsel failed to grasp the very real possibility that Rinehart was guilty of only manslaughter, not second-degree murder. The Cherokee Mental Health Institute report indicated that the victim might have been the aggressor by sexually assaulting Rinehart. Rinehart was only five feet tall and weighed only 95 pounds at the time, while the victim was an older and larger person. Accordingly, competent counsel would have researched and investigated the possibility of manslaughter in two respects—imperfect self-defense and provocation. Rinehart may have been unreasonable in using deadly force in self-defense to counter the assault, but his imperfect self-defense would justify a manslaughter conviction. Further, provocation may have existed here—if the extenuating circumstances negate malice aforethought. Rinehart could be guilty of manslaughter but not of second-degree murder. However, defense counsel did not pursue the lesser-included charge of manslaughter and did not stress this possibility to Rinehart or his parents. Rinehart was obviously materially prejudiced because he was not informed of these possibilities before he entered his guilty plea.

Finally, defense counsel did not pursue the possibility that much of the state's evidence could be excluded by a suppression motion at trial. Counsel knew of the circumstances surrounding the statement signed by Rinehart—the five-hour police interrogation without the benefit of advice from counsel or his parents—yet did not sufficiently investigate the matter. Defense counsel should at least have pursued the possibility that Rinehart's statement might be excludable. Further, counsel should have recognized that the defendant's knife and jacket might also have been excludable under the "fruit of the poisonous tree" doctrine. Since all of the direct evidence which connected Rinehart to the crime charged was at least potentially excludable, the defendant was materially prejudiced by counsel's failure to adequately investigate the possibility of suppression.

The final issue is whether Rinehart was denied an impartial tribunal at arraignment and was subsequently sentenced improperly. Before Rinehart's arraignment, Judge Brannon went to Iowa City on his own initiative to consult a physician who had examined Rinehart at the court's request. Some of the physician's statements went beyond the contents of the written Iowa City report. Judge Brannon did not disclose to Rinehart or his defense counsel either the trip itself or the information he elicited from the physician until after he had sentenced Rinehart.

Judge Brannon's undisclosed ex parte inquiry constituted improper conduct which denied Rinehart his due process right to a disinterested and impartial tribunal. *See* ABA Standards Relating to *The Function of the Trial Judge* § 1.6 (Approved Draft, 1972); Code of Judicial Conduct, Canon 3A(4) (Final Draft, 1972). Judge Brannon testified that his conversation with the physician was perhaps partially responsible for his conclusion that society needed to be permanently protected from Michael Rinehart. He became convinced that Rinehart was a sexual psychopath who could never

adjust, and feared the possibility that Rinehart, if released from prison, would commit future sexual assaults. Consequently, Judge Brannon concluded before the arraignment that he must sentence Rinehart to life imprisonment. The Judge knew he had to find Rinehart guilty of at least second-degree murder in order to impose a life sentence. Rinehart was therefore denied his right to an impartial tribunal at arraignment because Judge Brannon was unable to objectively perform his duty of ensuring that Rinehart's guilty plea was made voluntarily and understandingly. Further, Rinehart was fatally prejudiced by the fact that his defense counsel were not informed of the Judge's ex parte inquiry until after sentencing. Co-counsel has testified that he would not have advised Rinehart to plead guilty if he had known about Judge Brannon's trip to Iowa City.

In addition, the sentencing procedure further violated Rinehart's due process rights. By his failure to disclose the Iowa City trip to defense counsel, Judge Brannon denied counsel the opportunity to challenge the information upon which the life sentence was partially based. While there is some question as to whether presentence reports must be disclosed, these ex parte conversations were *not* a presentence report and there is considerable authority that the court should not consider any other ex parte information in sentencing without making disclosure. *See Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1947); *United States v. Solomon,* 422 F.2d 1110 (7th Cir.), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565 (1970). Information unfavorable to the accused on the issue of sentencing ought to be disclosed to defense counsel so that inaccuracies may be discovered. This need for disclosure is particularly acute in the *Rinehart* case because part of the information the physician related to Judge Brannon was based upon statements made by Rinehart while under the influence of a truth serum. Thus, the information which should have been disclosed was of doubtful reliability.

Each of the above claims—the involuntary guilty plea, ineffectiveness of counsel and the Judge's improper conduct—is closely intertwined with, if not inseparable from, the others. We conclude that Rinehart is entitled to judgment as a matter of law, especially in view of the aggregate effect of these denials of due process. The decision and order of the district court are affirmed.

Affirmed.