## David L. Copas *v.* Warden
## (11241)

Daly, Landau and Freedman, Js.

Argued November 30, 1992—decision released March 23, 1993

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *Jacqueline J. Footman,* assistant state's attorney, for the appellant (respondent).

*Christopher C. Sheehan,* deputy assistant public defender, for the appellee (petitioner).

Daly, J. The respondent was granted permission to appeal from the habeas court's judgment granting relief to the petitioner on his writ of habeas corpus. The

respondent challenges the habeas court's conclusion that the petitioner's counsel was ineffective at his sentencing hearing in violation of the petitioner's rights guaranteed by the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The respondent also disputes the habeas court's decision to vacate the petitioner's conviction. We agree with the respondent's second claim and reverse the decision of the habeas court in part and remand the case to the habeas court for further proceedings.

The trial court found the following facts. On April 27, 1986, the body of a teenage girl was found off Hop River Road in Coventry. The victim had been repeatedly stabbed and had been struck in the head with a rock. The police investigation revealed that two days earlier the petitioner had given a ride to the victim and two friends of hers from a bowling alley in Mansfield. The two friends were dropped off at 11:30 p.m. in Ashford. The victim was to be dropped off at her grandparents' residence but she never arrived. The investigation further revealed that early in the morning of April 26, 1986, a man who resembled the petitioner was observed standing in front of a car similar to the petitioner's on the site where the victim's body was later discovered. On the same morning, the petitioner called a friend to help him get his car started. The friend came to help the petitioner, whose car was located near the site where the body was found.

On April 29, the petitioner was searched pursuant to a warrant. A knife was found on him. The petitioner was read his rights and detained by the police. During his detention, the petitioner confessed to the murder of the victim. Before confessing, he signed a waiver form and repeatedly assured the police that he did not want a lawyer.

In his confession, the petitioner described in detail the circumstances of the night of April 25 and the morning of April 26. His account was corroborated by the findings of the police investigation. He stated that after driving around for some time after dropping off the victim's friends, he stopped on Hop River Road. He smoked marihuana with the victim. The petitioner admitted that he stabbed the victim, hit her on the head with a rock, and dragged her body into the woods. His statements were recorded and transcribed and he signed the transcription of his statements.

On May 1, 1986, the petitioner was arrested for murder. The petitioner retained Attorney Jerry Gruenbaum, a self-described tax and corporate law specialist who had handled one felony prior to the petitioner's case, and an appearance was filed on May 5, 1986. On October 7, 1986, the petitioner pleaded guilty to the offense of murder in violation of General Statutes § 53a-54a. There was no plea bargain. On November 4, 1986, Gruenbaum argued a motion to withdraw his appearance before the trial court because the petitioner's family had hired an investigator and another attorney, whose identity was not known. The court denied the motion. Prior to sentencing on November 19, 1986, the trial court heard arguments on the petitioner's motion to withdraw his plea, filed prior to the hearing, and subsequently denied the motion.

As part of the presentence investigation, the court ordered a report regarding the petitioner by the court's diagnostic clinic. The presentence investigation report stated: "He is the product of a hard working and well meaning family, certainly not a victim of a hopeless upbringing." The diagnostic clinic report was attached. It describes the petitioner's history, including the departure of his father shortly after his birth and the trouble he experienced in establishing a relationship with the man who married his mother when he was five

years old. His maternal grandfather played an important role as a substitute father in his life. His grandfather died when the petitioner was fifteen and, according to the report, the petitioner never fully came to terms with the death. The petitioner's relationship with his mother became strained after his mother forced his grandmother to leave the house that she and the petitioner's mother had purchased together. The petitioner then moved in with cousins who exposed him to criminal behavior. The report also describes a history of psychiatric, educational, employment, and substance abuse problems experienced by the petitioner.

At sentencing, the state argued for the maximum sentence while Gruenbaum argued for forty years. The state presented two members of the victim's family who spoke to the court. None of the petitioner's family members was present. Gruenbaum's own sentencing argument rehashed facts adduced during arguments for the motion to withdraw the plea. The petitioner was ultimately sentenced to serve a term of incarceration of fifty years.

The petitioner filed a petition for a writ of habeas corpus dated November 2, 1987. An amended petition was filed on February 1, 1991, alleging that ineffective assistance of counsel rendered his conviction illegal. The petitioner alleged that his counsel failed to consult and advise him, misinformed him of the consequences of his plea, failed to inquire into the petitioner's history of psychological and substance abuse problems, failed to inquire and develop evidence of the petitioner's mental state at the time of the incident, at the time of the confession and during the trial court proceedings, failed to get an independent evaluation of the petitioner, and failed to present evidence, information and arguments about the petitioner's mental state to the prosecutor and the trial court during pretrial proceedings, plea negotiations, and sentencing.

A full evidentiary hearing was held. The habeas court reviewed the transcript of a grievance committee hearing concerning Gruenbaum's performance on the petitioner's case. The hearing was held March 16, 1988, and the transcript was made an exhibit in the habeas corpus proceeding. The habeas court noted that "[w]ith regard to a clinical evaluation of the petitioner that was ordered by the court for sentencing purposes, Gruenbaum stated: 'That was definitely not a very helpful document. It was the most damaging document that was in David's file, but it also talked about his past criminal record, and so forth, which I knew about . . . . It was an extremely biased document against him.' "

The habeas court determined that the petitioner's trial counsel's "conduct in preparing for and in his presentation of the sentencing hearing was not reasonably competent nor was it within the range of competence of Connecticut attorneys practicing criminal law in 1986." The habeas court concluded that "but for Gruenbaum's incompetent representation of the petitioner the result of the proceeding would have been different." After it reached this determination, the habeas court did not consider any of the petitioner's remaining claims concerning Gruenbaum's ineffectiveness as it affected his conviction. Judgment was rendered in favor of the petitioner and the conviction was vacated. The respondent claims on appeal that the habeas court improperly determined (1) that the defendant's trial counsel was ineffective, and (2) that the proper remedy for ineffective assistance of counsel at sentencing is to vacate the judgment of conviction.

I

"It is axiomatic that the right to counsel is the right to the effective assistance of counsel. *Strickland* v.

*Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984), quoting *McCann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).'' (Internal quotation marks omitted.) *Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356 (1991). A defendant has the right to counsel at every critical stage, including sentencing. *Consiglio* v. *Warden,* 153 Conn. 673, 675–76, 220 A.2d 269 (1966).

"It is our obligation as an appellate court to make a two part analysis to determine whether the habeas court's decision is clearly erroneous. First, where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts that are set forth in the memorandum of decision; second, where the factual basis of the decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence. . . . In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony. . . . It is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved. *State* v. *Martin,* 195 Conn. 166, 171, 487 A.2d 177 (1985). We cannot substitute our judgment for that of the habeas court.'' (Citations omitted.) *Tyson* v. *Warden,* 24 Conn. App. 729, 736–37, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991).

"Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment 'is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case.' *Cuyler* v. *Sullivan,* 446 U.S. 335,

342, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). As such, that question requires plenary review by this court unfettered by the 'clearly erroneous' standard. Id.; see also *Mannhalt* v. *Reed,* 847 F.2d 576, 579 (9th Cir.), cert. denied, 488 U.S. 908, 109 S. Ct. 260, 102 L. Ed. 2d 249 (1988); *Government of the Virgin Islands* v. *Zepp,* 748 F.2d 125, 134 (3d Cir. 1984). Indeed, we have applied that scope of review, without specifically articulating it, to claims of ineffective assistance of counsel. See *Johnson* v. *Commissioner,* 218 Conn. 403, 423–29, 589 A.2d 1214 (1991); *Siemon* v. *Stoughton,* 184 Conn. 547, 440 A.2d 210 (1981). In accordance with this scope of review, we next consider the merits of the petitioner's claim." *Phillips* v. *Warden,* supra, 131–32.

There are two components to a claim of ineffective assistance of counsel. First, the petitioner must demonstrate that counsel's performance was deficient. *Williams* v. *Warden,* 217 Conn. 419, 422, 586 A.2d 582 (1991). The petitioner also must demonstrate that counsel's deficient performance prejudiced the defense. Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland* v. *Washington,* [supra, 687]; *Aillon* v. *Meachum,* 211 Conn. 352, 357, 559 A.2d 206 (1989)." (Internal quotation marks omitted.) *Williams* v. *Warden,* supra.

"Establishing that counsel's performance was deficient requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strickland* v. *Washington,* supra, 687. To demonstrate this, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id., 687–88. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the cir-

cumstances. Id., 688." (Internal quotation marks omitted.) *Daniels* v. *Warden,* 28 Conn. App. 64, 69, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992). "[T]he claim of ineffective representation must be examined as of the time the questioned representation occurred. *Levine* v. *Manson,* [195 Conn. 636, 649, 490 A.2d 82 (1985)]; *Siemon* v. *Stoughton,* [supra, 554]." (Internal quotation marks omitted.) *Miller* v. *Angliker,* 4 Conn. App. 406, 419–20, 494 A.2d 1226, cert. denied, 197 Conn. 809, 499 A.2d 59 (1985).

The transcript demonstrates that at sentencing the trial court reviewed the presentence investigation report and the arguments of petitioner's counsel and the state's attorney, as well as the pleas of the victim's family. Defense counsel did not dispute the statement in the presentence investigation report indicating that the petitioner had been raised in a stable environment even though the court's clinical evaluation indicated otherwise.

The habeas court found that Gruenbaum did not satisfy the requirements of Practice Book §§ 924 and 925[1] because he failed to clarify the inconsistencies between the presentence report and the clinical evaluation or to ask the trial court to consider the petitioner's unstable background as set forth in the clinical evaluation in imposing the sentence despite the fact that the presentence report seemingly dismissed such facts stating that the petitioner was the "product of a hard working and well meaning family, certainly not a victim of

[1] In 1986 Practice Book § 924 provided: "Defense counsel shall familiarize himself with the contents of the presentence report, including the evaluative summary, and any special medical or psychiatric reports pertaining to his client."

In 1986 Practice Book § 925 provided: "Defense counsel shall bring to the attention of the judicial authority any inaccuracy in the presentence or alternate incarceration assessment report of which he is aware or which the defendant claims to exist."

a hopeless upbringing." Gruenbaum explained at the habeas hearing that he did not consider the statement in the presentence investigation to be inconsistent with the petitioner's history as set forth in the diagnostic clinic evaluation. He stated that his strategy was to rely on the mercy of the court. It is not evident that pointing out these inconsistencies would conflict with that strategy. We agree with the habeas court that counsel's failure to bring these inconsistencies to the attention of the court during sentencing was improper and unjustified.

Counsel's statements at sentencing consisted of a recitation of matters discussed earlier with regard to the motion to withdraw the plea. There was only minimal discussion of mitigating factors such as the petitioner's mental state or family history. This is surprising considering the nature of the crime. Furthermore, the petitioner's counsel did not ensure that the petitioner's relatives were present at the sentencing hearing to speak on the petitioner's behalf. At the habeas corpus hearing, the petitioner's wife and mother testified that they did not know when the sentencing hearing was taking place.

We agree with the habeas court that the petitioner's counsel's preparation and presentation for the sentencing hearing were inadequate. The failure of the petitioner's counsel to point out the inconsistencies between the presentence investigation and the diagnostic clinic evaluation coupled with his inadequate presentation at sentencing demonstrates that the performance component of the ineffective assistance of counsel analysis has been satisfied.

We also do not agree with the respondent that the habeas corpus court improperly determined that the petitioner was prejudiced by counsel's ineffective representation because it is reasonably probable that, had

his counsel been effective, the outcome of the sentencing hearing might have been different.

## II

The respondent next claims that the habeas court improperly vacated the judgment of conviction against the petitioner. We agree. The habeas court's conclusion that counsel at sentencing was ineffective is an insufficient basis for overturning the judgment of conviction. Instead, only the sentence should have been vacated. "In the adjudication of petitions for habeas corpus, the remedies available to a court depend upon the constitutional rights that are being vindicated." *Gaines* v. *Manson*, 194 Conn. 510, 516, 481 A.2d 1084 (1984).

"In the exercise of its power under [General Statutes] § 52-470 to grant such relief 'as law and justice require,' the trial court, much like a court of equity, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established." *Gaines* v. *Manson*, supra, 528.[2] Although the habeas court properly determined that the petitioner was not afforded effective assistance of counsel at his sentencing hearing, it did not order the proper remedy. The defect in the sentencing proceeding did not affect the

[2] General Statutes § 52-470 provides: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require.

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

judgment of conviction. Thus, the habeas court's remedy should have been limited to resentencing because that is commensurate with the habeas court's decision. See *State* v. *Williams,* 199 Conn. 30, 505 A.2d 699 (1986) (where pro se defendant was not provided counsel when he requested it at sentencing hearing in violation of his rights, the court remanded the case with instructions to vacate the sentence and the case was remanded only for sentencing); *Consiglio* v. *Warden,* supra (remedy for lack of counsel at sentence review was a new sentence review hearing and not a new sentencing hearing). We, therefore, reverse the order of the trial court vacating the judgment of conviction and order that this case be remanded for resentencing. See *Miller* v. *Commissioner of Correction,* 29 Conn. App. 773, 617 A.2d 933 (1993) (case remanded for resentencing because the trial court improperly sentenced beyond the scope of the plea agreement); *State* v. *Dennis,* 30 Conn. App. 416, 621 A.2d 292 (1993) (case remanded because the defects in sentencing necessitated resentencing by the trial court).

We recognize, however, that the habeas court did not address the claims raised in the petition related to ineffective assistance of counsel as it affected the plea negotiations and the petitioner's decision to plead guilty. Our Supreme Court has in the past remanded cases to the habeas court for an evidentiary hearing on a particular matter where there was none below and the record was inadequate for a determination of the issues on appeal. See *Galland* v. *Bronson,* 204 Conn. 330, 527 A.2d 1192 (1987) (remanded for an evidentiary hearing on the issue of deliberate bypass because the record was inadequate to make a determination on that issue). In this case, an evidentiary hearing was held but the trial court did not reach any issues beyond ineffective assistance of counsel at sentencing. The habeas court must address these claims.

We, therefore, remand the case for its consideration of the remaining claims. See *Clark* v. *Duckworth,* 906 F.2d 1174 (7th Cir. 1990) (when the district court's judgment granting relief to the petitioner was reversed, the case was remanded for consideration of ineffective assistance of counsel claim the district court had not yet addressed). If the habeas court determines that there was ineffective assistance of counsel at the time of the petitioner's conviction, then the habeas court may properly vacate the judgment of conviction. Should it determine that counsel was not ineffective in relation to the petitioner's conviction, the habeas court should order a new sentencing hearing for the petitioner.

The judgment of the habeas court vacating the judgment of conviction is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion FREEDMAN, J., concurred.

LANDAU, J., dissenting. I respectfully dissent from the decision of the majority and would affirm the decision of the habeas court.

As the majority correctly points out, whether the underlying historical facts found by the habeas court constitute "a violation of the petitioner's rights under the sixth amendment 'is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case.' *Cuyler* v. *Sullivan,* 446 U.S. 335, 342, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). As such, that question requires plenary review . . . unfettered by the 'clearly erroneous' standard." I agree with the majority that the petitioner's counsel's performance was deficient at the sentencing stage of the hearing. Counsel's performance during the plea and negotiation stage of the petitioner's trial, however, was also wholly defective and inadequate. The habeas

court found as much, and its decision to vacate the petitioner's entire conviction should be affirmed.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate that the counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland* v. *Washington,* 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Williams* v. *Warden,* 217 Conn. 419, 422, 586 A.2d 582 (1991). Thus, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington,* supra; *Williams* v. *Warden,* supra. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland* v. *Washington,* supra, 688. " 'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' . . . Id., 689." *Johnson* v. *Commissioner,* 218 Conn. 403, 425, 589 A.2d 1214 (1991).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland* v. *Washington,* supra, 691. "Even the best criminal defense attorneys would not defend a particular client in the same way." Id., 689. "[S]trategic choices made after thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable . . . ." Id., 690–91. "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.' " Id.,
689. Furthermore, a court will not second guess the
tactics and strategy chosen by trial counsel after rea-
sonable investigation and research. See *Strickland* v.
*Washington,* supra, 689; *Aillon* v. *State,* 597 F. Sup.
158, 164 (D. Conn. 1984).

I do not agree with the majority that the habeas court
did not address the claims raised by the petitioner
related to ineffective assistance of counsel at the plea
stage. When the habeas court concluded that it would
not address the other claims of ineffective assistance
of counsel, it did so because it was apparent to that
court that the result would be the same. That is, the
petitioner's entire conviction would be vacated. The rec-
ord is replete with instances in which the habeas court
found that the petitioner's counsel was woefully unpre-
pared and inadequate to represent his client effectively
during the plea stage. This is not a simple problem of
the trial counsel's, "after reasonable investigation and
research," deciding what he thought was the most pru-
dent course of action to represent his client effectively.
Indeed, as the habeas court found, "[a]lthough he had
filed a notice to the state respecting a defense based
upon mental disease or defect, Attorney Gruenbaum
was unable to define 'extreme emotional disturbance.'
He was unable to set forth the elements of the crime
of murder . . . . It became apparent that trial coun-
sel, at best, was confused about presenting an affirm-
ative defense based upon mental disease or defect."

A similar issue was addressed in *Rinehart* v. *Brewer,*
561 F.2d 126 (8th Cir. 1977). In *Rinehart,* the peti-
tioner's habeas relief, based on, inter alia, a claim of
ineffective assistance of counsel, was affirmed[1] after

---

[1] In *Rinehart,* the Eighth Circuit determined that the defendant's plea
was involuntarily made because the court, as well as defense counsel, failed

the court noted that "[t]here is uncontroverted evidence in the record which suggests that [the defendant] was not informed of the elements of the crime of second-degree murder. Since his own defense counsel were confused as to the distinctions among first and second-degree murder, and manslaughter, it is inconceivable to conclude that [the defendant] would have known . . . that a guilty plea would be an admission of the existence of the intent to kill." Id., 130–31. The court continued: "One of the defense lawyers did not discuss the law of manslaughter with [the defendant] . . . and himself was unfamiliar with its elements. . . . It is unlikely that [the defendant] would have understood manslaughter to be the appropriate result when the record reveals his own lawyers were confused as to the difference between manslaughter and murder." Id., 131.

As in *Rinehart,* defending a person on trial for murder and not knowing the elements of the crime fall far below the level of "reasonableness under prevailing professional norms." *Strickland* v. *Washington, supra,* 688. Here, counsel's actions were not based on informed strategic choices made by the petitioner. We can hardly expect a defendant to make informed choices when it is clear that his attorney has no idea which choices to present to his client. It is apparent that there was no investigation of the law by defense counsel in this case. Thus, the petitioner clearly demonstrated that counsel's performance was deficient.

---

to explain adequately the elements of the crime to the defendant. *Rinehart* v. *Brewer,* 561 F.2d 126, 130 (8th Cir. 1977).

The court in the present case did canvass the defendant and explained the elements of the crime of murder. The court, however, also asked the defendant if his counsel had adequately explained the elements of the crime to him. While the defendant said that his counsel had, this admission directly conflicts with the habeas courts' finding that petitioner's counsel was unable to set forth the elements of murder. A canvass of the defendant, while absolutely essential, cannot replace the need for effective assistance of counsel.

The habeas court found that the petitioner was prejudiced by his counsel's deficient performance at the plea stage. First, the court noted that Gruenbaum never argued the petitioner's motion for discovery or his motion to suppress. "According to trial counsel, he never requested an independent psychiatric examination because he did not feel that any psychiatrically oriented defenses applied." In some instances, this decision might be seen as strategic. Gruenbaum was unable, however, to define extreme emotional disturbance and was confused about "presenting an affirmative defense based upon mental disease or defect," as well as unable to appreciate the "differences between 'insanity,' 'extreme emotional disturbance' and 'diminished capacity.'" Such confusion conclusively demonstrates that the petitioner did not receive effective assistance when determining whether to mount a psychiatric defense. Second, the habeas court found that there was absolutely no plea bargain. The defendant pleaded guilty, the state would argue for the maximum sentence, and the defense "was free to argue for any lesser sentence." Under other circumstances, this could be also interpreted as a trial strategy. This decision, however, was born of a lack of reasonably expected investigation and research into the law, the facts, and the procedures surrounding a crime of this nature.

The habeas court concluded that the defendant was prejudiced by the deficient performance of defense counsel at both the plea stage and sentencing.[2] Therefore, I would affirm the judgment of the habeas court vacating the judgment of conviction.

[2] Even if we assume that the habeas court did not explicitly make such a finding, there is no reason to remand this case for a hearing on the petitioner's additional claims. "Conclusions of fact may be drawn on appeal . . . where 'the subordinate facts found by the trial court make such a conclusion inevitable as a matter of law.'" *State* v. *Reagan,* 209 Conn. 1, 8–9, 546 A.2d 839 (1988).